AO 106 (Rev. 04/10) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

INFORMATION ASSOCIATED WITH FACEBOOK
ACCOUNT
"AXEL APONTE" WITH USER ID "100008657941412" AND
"JOSE EDUARDO UBILES" WITH USER ID "ESECRETA";
THAT IS STORED AT PREMISES CONTROLLED BY
FACEBOOK INC.

Case No. 21-MJ-502

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:
INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT "AXEL APONTE" WITH USER ID "100008657941412" AND "JOSE EDUARDO UBILES" WITH USER ID "ESECRETA"; THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC.    The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, Particular Things to be Seized, which is incorporated by reference as if fully set forth herein, all of which are fruits, evidence and instrumentalities of a violation of Title 21, United States Code, Section 846

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Section 846

The application is based on these facts: *See* attached affidavit.
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Application submitted electronically by email in .pdf format
Oath administered, and contents and signature attested to me
and before me as true and accurate by telephone pursuant to
Fed.R.Crim.P. 4.1 and 41(d)(3), this First day of February
2021.

Joseph Briganti, Task Force Officer ATF
*Printed name and title*

Date:  February 1, 2021

*Judge's signature*

City and state:  Rochester, New York

Mark W. Pedersen, U.S. Magistrate Judge
*Printed name and Title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook account:

    a.  Facebook account "AXEL APONTE" with Facebook User ID "100008657941412"

    b.  Facebook account "JOSE EDUARDO UBILES" with Facebook user ID "ESECRETA"

believed to be utilized by CW; which is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities **beginning November 7, 2016 through and including December 15, 2016**;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **beginning November 7, 2016 through and including December 15, 2016**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user **beginning November 7, 2016 through and including December 15, 2016**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account **beginning November 7, 2016 through and including December 15, 2016**;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of **21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute heroin)** involving **CARLOS JAVIER FIGUEROA, and others** between on or about early 2015 through on or about December 29, 2018, including, for the user ID identified on Attachment A, information pertaining to the following matters:

    (a) Any evidence of narcotics possession or trafficking and firearms possession or trafficking;

    (b) Messages between the subject account and coconspirators, including but not limited to CARLOS JAVIER FIGUEROA;

    (c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

    (d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

    (e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT(S) <br><br> "AXEL APONTE" WITH USER ID "100008657941412" AND "JOSE EDUARDO UBILES" WITH USER ID "ESECRETA"; <br><br> THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 21-MJ-502 <br><br> FILED UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Joseph Briganti, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I have been employed as Police Investigator since 2011.   Prior to being employed as a Police Investigator, I was employed as a Police Officer since 1995 for both the City of Rochester New York Police Department (RPD) and the Niagara Falls New York

Police Department.  As part of my professional experience, I have participated in state and federal investigations involving the illegal possession of firearms and narcotics and violations of federal and state law.  During my tenure as a Rochester Police Investigator, I have participated in numerous investigations relating to armed individuals who were involved in the distribution of controlled substances, including cocaine and heroin, in violation of federal narcotics laws, including Title 21, United States Code, Sections 841(a) and 846 and Title 18 United States Code, Sections 922 and 924.  I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs.  I have been the affiant on affidavits in support of wire communication intercepts and numerous federal search warrants, arrest warrants, and other applications.  Through my training, education, experience, and speaking with other law enforcement officers and confidential sources, I have become familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, and with the methods of payment for such drugs.  I am also familiar with the coded language and jargon used by persons engaged in narcotics trafficking to reference various narcotics and controlled substances, as well as the ways in which illicit drug sellers and users attempt to evade detection through counter-surveillance measures, the use of codes, cryptic phrases, abbreviated words, and prearranged terminology, and the use of smart phones and other communications technology including social media applications and websites such as Facebook.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute, heroin) has been committed by CARLOS JAVIER

FIGUEROA, and others.  There is also probable cause to search the information described in **Attachment A** for evidence of these crimes, as described in **Attachment B**.

**PROBABLE CAUSE**

4.      On December 8, 2016, law enforcement responded to 54 Miller Street, Rochester, New York, due to reports of gunshots being fired in that area.  After law enforcement arrived, they found an individual, hereinafter the COOPERATING WITNESS (CW) inside 54 Miller Street, about 8 to 10 feet away from a backpack containing an aggregate weight of 4.82 pounds of heroin in various baggies.  Law enforcement also found a black Springfield XD .40 caliber, semi-automatic handgun underneath a propped-up mattress that CW was sitting on.  It appeared that shots were fired from inside the residence through the front door and downstairs window.

5.      As a result, CW was charged by Criminal Complaint in the Western District of New York with a violation of Title 21, United States Code, Section 841(a)(1) (possession of one kilogram of more of heroin with intent to distribute).  On February 23, 2018, he pleaded guilty to a two-count Information charging violations of Title 21, United States Code, Section 841(a)(1) (possession of one kilogram or more of heroin with intent to distribute) and Title 18, United States Code, Section 924(c)(1)(A)(iii) (possession and discharge of firearm in furtherance of a drug trafficking crime).

6.      As part of his plea agreement, CW entered into a cooperation agreement in hopes of obtaining consideration at sentencing.  CW has provided information to law enforcement, including but not limited to the following, in sum and substance.  According to CW, beginning in early 2015, he was part of a Drug Trafficking Organization led by CARLOS

3

JAVIER FIGUEROA (hereinafter the "Figueroa DTO").[1]  On December 7, 2016, he, Jose Biles and another member of the Figueroa DTO, OBED TORRES GARCIA, stole a large amount of heroin and a handgun from the one of the DTO's stash locations.  The stolen heroin and handgun were the same heroin and handgun law enforcement found at 54 Miller Street.

7.    On January 26, 2021, in a meeting with law enforcement, CW stated that while he was at 54 Miller Street he received messages on Facebook messenger from Jose Ubiles (hereinafter "Ubiles.")  CW stated Ubiles was alerting the CW that CARLOS JAVIER FIGUEROA arrived at Ubiles' mother's house with the CW's sister and girlfriend.  Ubiles' message to the CW indicated, in sum and substance, that CARLOS JAVIER FIGUEROA knew that the CW and Ubiles had stolen the heroin and firearm from the DTO and was looking for the CW.  Ubiles also indicated that the DTO was holding the CW's sister and girlfriend and were not going to release them until the drugs and gun were returned.[2]  Law enforcement has spoken to other individuals who were with CARLOS JAVIER FIGUEROA on December 8, 2016, and who confirmed that FIGUEROA was trying to locate CW so he could retrieve the stolen heroin and handgun.

---

[1] CARLOS JAVIER FIGUEROA was arrested and charged with violations of 21 U.S.C. § 846 and other crimes on January 29, 2018.  FIGUEROA's case is pending, and he and other coconspirators are currently charged in a 20-count indictment that includes, among other charges, violations of Title 21, United States Code, Sections 846 and 841(b)(1)(A) (Narcotics Conspiracy – 1 kilo or more heroin and 5 kilos or more of cocaine) between in or about 2015 through on or about January 29, 2018, and Title 18, United States Code, Sections 924(j)(1) (Murder With a Firearm in Furtherance of Drug Trafficking) and 924(c)(1)(A) (Possessing, Brandishing, and Discharging Firearms in furtherance of a Drug Trafficking Crime).  See 18-CR-6094, ECF No. 240.

[2] In prior applications, your affiant stated that the CW stated, "[h]e received messages on Facebook Messenger from CARLOS JAVIER FIGUEROA trying to figure out where CW was . . . ."  That was based upon information your affiant had at the time.  In subsequent meetings with the CW, the CW has clarified that the messages he received were from Jose Ubiles, and that Ubiles told the CW that CARLOS JAVIER FIGUEROA was looking for him.

8.      In an earlier meeting with law enforcement, CW showed law enforcement a Facebook account for "AXEL APONTE" with user ID "100008657941412" (hereinafter "ACCOUNT 1"), which he identified as his. CW consented to the search of ACCOUNT 1 but could not remember his password.  CW stated that the Facebook messages were on ACCOUNT 1 or another Facebook account he used.  However, law enforcement and CW were unable to locate the other account on Facebook or determine the other account's user ID.  Based on the information provided, your affiant applied for and obtained from your honor a search warrant for ACCOUNT 1 (20-mj-777, issued October 30, 2020).  However, that search warrant was not served on Facebook and was never executed.

9.      In a subsequent meeting with the CW on December 3, 2020, the CW and law enforcement located a second account that CW used, bearing the name "Axel Camacho" with user ID "axel.apontecamacho" (hereinafter ACCOUNT 2).  The CW consented to the search of this account, but he could not remember his password.  In the meeting on December 3, 2020, CW indicated he believed that he received the messages on ACCOUNT 2.  Based on that information, your affiant applied for and obtained from your honor a search warrant for ACCOUNT 2 (20-mj-788, issued December 4, 2020).  That search warrant was executed, but the messages in question were not located.

10.     On January 26, 2021, CW showed Law Enforcement a Facebook account for "JOSE EDUARDO UBILES" with user ID "ESECRETA", which he identified as the Facebook account utilized by Jose Ubiles.[3]

---

[3] On August 29, 2019, JOSE UBILES was the victim of a homicide in the City of Rochester.  Members of the DTO were not involved in Ubiles' death.  Ubiles' Facebook account appears to have had no activity since the time of his death.

11.     Based on the review of the documents provided by Facebook regarding ACCOUNT 2, Law Enforcement determined that the relevant Facebook messages were not on ACCOUNT 2. After the additional information obtained through recent interviews with CW regarding ACCOUNT 1 and the Facebook account utilized by Jose Ubiles, your affiant believes that the relevant Facebook messages will be found on ACCOUNT 1 along with "JOSE EDUARDO UBILES" with user ID "ESECRETA", the Facebook account utilized by Jose Eduardo Ubiles, at the time of the incident. Therefore, your affiant believes that the relevant Facebook accounts are ACCOUNT 1 ("AXEL APONTE" with user ID "100008657941412"), and "JOSE EDUARDO UBILES" with user ID "ESECRETA", and that both accounts will show pertinent information regarding the violations of federal law and/or identifies people that were involved in these crimes. Based on admissions of CW, there is reason to believe that there is evidence of a narcotics conspiracy in violation of 21 U.S.C. § 846 through Facebook.

12.     Your affiant respectfully requests that the warrant include activities beginning November 7, 2016 through and including December 15, 2016.

13.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

14.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses,

6

Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

15.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items

available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

18.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

19.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

8

20.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

22.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

24.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

25.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

26.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP

address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

27.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

28.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or

controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

30.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.   Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

31.     Based on the forgoing, I request that the Court issue the proposed search warrant.

32.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

33.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, who will then complete the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

34.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

Respectfully submitted,

JOSEPH BRIGANTI, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Affidavit and Application submitted
electronically by email in .pdf format. Oath
administered, and contents and signature,
attested to me as true and accurate telephonically
pursuant to Fed.R.Crim.P. 4.1 and 41(d)(3) on this
First day of February 2021.

HON. MARK W. PEDERSEN
United States District Court

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook account:

    a.  Facebook account "AXEL APONTE" with Facebook User ID
        "100008657941412"

    b.  Facebook account "JOSE EDUARDO UBILES" with Facebook user ID
        "ESECRETA"

believed to be utilized by CW; which is stored at premises owned, maintained, controlled,

or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities **beginning November 7, 2016 through and including December 15, 2016**;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **beginning November 7, 2016 through and including December 15, 2016**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user **beginning November 7, 2016 through and including December 15, 2016**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account **beginning November 7, 2016 through and including December 15, 2016**;

(m)   All information about the user's access and use of Facebook Marketplace;

(n)   The types of service utilized by the user;

(o)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of **21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute heroin)** involving **CARLOS JAVIER FIGUEROA, and others** between on or about early 2015 through on or about December 29, 2018, including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a) Any evidence of narcotics possession or trafficking and firearms possession or trafficking;

(b) Messages between the subject account and coconspirators, including but not limited to CARLOS JAVIER FIGUEROA;

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**

_____

_____

_____

_____

_____

I further state that:

      a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

      b.     such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____         _____
Date                            Signature

2